IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2024

**STATE OF TENNESSEE v. FRANCISCO OLIVA**

**Appeal from the Criminal Court for Shelby County
No. C2201103/22-00755   Carolyn Wade Blackett, Judge**

———————————————

**No. W2023-01572-CCA-R3-CD**

———————————————

A Shelby County jury convicted the Defendant, Francisco Oliva, of second degree murder, and the trial court ordered him to serve a twenty-year sentence. On appeal, the Defendant asserts that the evidence was insufficient to support his conviction. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Charles Gilchrist, Memphis, Tennessee, for the appellant, Francisco Oliva.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Stephen Crossnoe and Robert Steele, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION
I. Facts**

This case arises from a shooting that occurred on September 25, 2021, behind the Z Mart in Memphis, Tennessee. The Defendant and Juan Zavala, the victim, engaged in an argument that resulted in the Defendant shooting the victim multiple times in his upper body. A Shelby County grand jury indicted the Defendant for the first degree premeditated murder of the victim. We summarize the evidence presented at trial as follows.

Rafat Khmous owned the Z Market located on South Perkins in Memphis, Tennessee, and had worked there since 2000. Mr. Khmous was working at the Z Market on September 25, 2021, the day of the shooting. Mr. Khmous took the garbage out that

morning and saw six men drinking behind the store. Two of the men, the Defendant and the victim, were arguing. As Mr. Khmous passed the men, he told them to "calm down" and then returned inside his store. Mr. Khmous was familiar with the Defendant because the Defendant was a long-time customer. The Defendant came to the store regularly, and Mr. Khmous would help the Defendant fill out a money order. Mr. Khmous believed the Defendant to be "a good guy, very friendly" and never knew the Defendant to have "problems" with anyone.

Mr. Khmous left the Z Market to take groceries home. While away, his brother who was working at the Z Market, called to tell Mr. Khmous that someone had been killed. Mr. Khmous immediately returned to the Z Market where the police had already arrived. The police requested the surveillance footage from the camera installed on the property and Mr. Khmous provided the recording to them.

Rebecca Gross, a technical litigation analyst at the Shelby County District Attorney's Office, prepared the surveillance footage Mr. Khmous provided for the State's use at trial. She shortened the footage, "zoomed in" on the actual crime, and then "zoomed out" to follow the Defendant as he left the area. She made these alterations to eliminate irrelevant portions of the video and to focus on the criminal incident on the recording to better aid the jury. The video was published to the jury. Ms. Gross also extracted still shots from the surveillance video.

The surveillance video showed the Defendant standing by the fence and firing several rounds at the victim. The Defendant stepped backward and then moved forward toward the victim and shot him again at close range. The Defendant stepped back again and then stepped forward and shot the victim in the head. The victim collapsed on the ground after the initial gun shots and remained slumped over on the ground.

Santa Rosa Bautista owned a taco truck that parked on the property behind the Z Market on the weekends. Nataly Solis, Ms. Bautista's daughter, was cooking inside the truck on September 25, 2021, when she heard gunfire. Initially, she was not alarmed as it was common for the area; however, her mother, Ms. Bautista, who had been sitting outside the taco truck, summoned her outside. Ms. Bautista heard gunfire but could not see what had occurred because vehicles blocked her view. After the gunfire ceased, the vehicles cleared the parking lot, and Ms. Bautista saw the victim slumped over next to the fence. She summoned her daughter, who immediately called the police. When the police arrived,

Ms. Solis told them that she had seen a man she knew as "Shorty" on the lot and that he left in a blue car after the shooting. Ms. Solis and Ms. Bautista also recognized the victim. Ms. Solis had often seen the victim sitting behind the Z Mart, drinking. Both women recognized and knew the Defendant as a frequent customer. Ms. Bautista described the Defendant as someone who "never did anything wrong to anyone." She had not seen the Defendant at the Z Market on the day of the shooting.

Shelby County Sheriff's Office Deputy Procknaw worked as a Memphis Police Department ("MPD") patrol officer in September 2021. In this capacity, he responded to a report of a shooting with injuries on South Perkins Road. Deputy Procknaw found the parking lot, mostly empty of vehicles, and the victim lying "next to a fence on the side of the building." He observed "obvious signs of gunshot wounds" on the victim's body. Deputy Procknaw secured the area looking for any potential threats and spoke to two women who worked at the food truck. MPD Sergeant Glen Teal photographed the scene, which included photographs of five 9 mm shell casings found near the victim's body.

MPD Officer John Yancey searched the area for the suspect vehicle, a blue Dodge Magnum ("Dodge"). Officer Yancey received "second-hand information" that the Dodge was at Amigos Restaurant on Mendenhall. Officer Yancey proceeded to Amigos where he located the unoccupied Dodge. Officer Yancey and another officer entered the restaurant and found the Defendant at the bar drinking a beer. The officers took the Defendant into custody and transported him to the MPD Public Safety Building.

At the MPD Public Safety Building, MPD Officer William Watson conducted a GSR test and collected the Defendant's clothing for testing. The Defendant did not speak English, and thus, MPD Detective Samuel Nieves, a city certified Spanish speaking officer, interpreted during the Defendant's police interview. Detective Nieves reviewed and explained the Defendant's rights to make sure he understood those rights. The Defendant agreed to speak with the detectives. The assigned detective then began questioning the Defendant and Detective Nieves translated the dialogue verbatim. Often colloquialisms were used, so Detective Nieves would pause the interview to explain to the assigned detective the "slang" or colloquialism.

The Defendant initially denied any role in the shooting. He repeatedly stated that he did not like "problems." The Defendant admitted to "run-ins" with the victim in the past. The assigned detective told the Defendant that police had surveillance footage and

had spoken to several witnesses. Ultimately, the Defendant admitted that he had shot the victim and then left with his friend "Shorty" in Shorty's blue Dodge. The Defendant said that the victim bullied him and that he attempted to diffuse the situation by offering the victim food, but the victim would not leave the Defendant alone and continued to try to pick a fight with him. The Defendant told the detectives that he put the 9mm gun he used to shoot the victim in Shorty's truck.

MPD Sergeant Ammons reviewed the Z Mart surveillance footage and saw that the victim had been shot and that the shooter drove away in a blue Dodge Magnum. The store owner identified the shooter as the Defendant based upon surveillance footage and showed Sergeant Ammons a picture of the Defendant's driver's license. Additionally, task force officers advised Sergeant Ammons that the blue Dodge Magnum had been located at Amigos. Sergeant Ammons instructed the officers at Amigos to have the Dodge towed to the Memphis Crime Scene Unit warehouse where cars are secured for processing. The following day, Sergeant Ammons obtained a warrant and delivered it to the crime scene unit to allow the technicians to process the Dodge. Officers processing the vehicle found a stolen Taurus 9 mm handgun with a magazine in the glovebox of the Dodge. The gun held one live round and the magazine had five. In the center console, officers found a Taurus model 66 .357 Magnum revolver with six live .357 magnum rounds in the chamber.

Scott Collier, a forensic pathologist at the West Tennessee Regional Forensic Center, conducted the autopsy in this case. Dr. Collier found five gunshot wounds to the victim's body. The victim sustained gunshot wounds to the head, chest, right and left arm, and abdomen. All the gunshot wounds were fatal except for the gunshot wound to the left arm because the bullet did not hit any major structures. A toxicology report indicated the presence of metabolites of marijuana, alcohol and the metabolite for cocaine. The victim's BAC was .18

After hearing this evidence, the jury found the Defendant guilty of the lesser-included offense of second degree murder. After a sentencing hearing, the trial court imposed a twenty-year sentence for the conviction. It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant challenges the sufficiency of the evidence supporting his conviction for second degree murder. He argues that the jury should have found him guilty of reckless homicide rather than second degree murder. The State responds that there was sufficient

evidence to support the jury's finding that the Defendant committed second-degree murder. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "strongest legitimate view of the evidence" contained in the record, as well as "all reasonable and legitimate inferences" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

Second degree murder is defined as "a knowing killing of another." T.C.A. § 39-13-210(a)(1). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b).

The evidence, viewed in the light most favorable to the State, showed that the Defendant knowingly shot and killed the victim. The Defendant and the victim had a history of disagreements and were arguing behind the Z Market on the day of the shooting. The Defendant admitted to the police that he shot the victim with a 9mm gun and that, after the shooting, he put the gun in the Dodge. Police recovered a 9mm gun from the glovebox in the blue Dodge. Video surveillance footage showed the Defendant shooting the victim multiple times and the autopsy confirmed that the victim sustained five bullet wounds. Video surveillance footage also showed the Defendant leaving the scene in the Dodge. This is sufficient evidence upon which a jury could find that the Defendant knowingly killed the victim by shooting him five times following an argument.

The Defendant argues, essentially, that the jury should have convicted him of reckless homicide which is "a reckless killing of another." T.C.A. § 39-13-215. As stated above, this court is not to re-weigh or reevaluate the evidence. *Matthews*, 805 S.W.2d at 779. The jury heard the Defendant's statements to the police that the victim was bullying him, and that the Defendant had a good reputation. By its verdict, the jury credited the State's evidence that the Defendant acted knowingly when he brandished a gun and fired at the victim multiple times. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Accordingly, we conclude that the Defendant was aware that shooting the victim five times in the torso, head, and arms was reasonably certain to cause death. T.C.A. § 39-11-302(b). The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE